UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CLAYTON SMITH,
                    Plaintiff,

                                                        **Hon. Hugh B. Scott**

                v.

                                                        **16CV862V**

                                                        **Report
                                                        and
                                                        Recommendation**

NANCY A. BERRYHILL[1], Acting
Commissioner of Social Security,

                    Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings

(Docket Nos. 13 (plaintiff), 20 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination

of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled

to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Clayton Smith" or "plaintiff") filed an application for disability insurance

benefits on January 30, 2013.   That application was denied initially.   The plaintiff appeared

before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded,

---

[1]Nancy A. Berryhill was the Acting Commissioner of Social Security at the commencement of this action,
but no successor has been named, see Joe Davidson, "Social Security Is now Headless because of Trump's
Inaction," Wash. Post, Mar. 12, 2018.   Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill
substituted for former Acting Commissioner Carolyn W. Colvin as defendant in this action; no further action is
required, 42 U.S.C. § 405(g).

in a written decision dated April 1, 2015, that the plaintiff was not disabled within the meaning

of the Social Security Act.   The ALJ's decision became the final decision of the Commissioner

on September 1, 2016, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on October 28, 2016 (Docket No. 1).   The parties moved

for judgment on the pleadings (Docket Nos. 13, 20).   The motions were deemed submitted on

October 21, 2017 (Docket No. 19; see also Docket No. 17).

## FACTUAL BACKGROUND[2]

Plaintiff was born on February 15, 1990 (R. 27).   Plaintiff claims that the onset of his

disability was from his birth (R. 27).   He has a limited education, graduating from high school

with a "deferred Regents" diploma after attending classes at BOCES (R. 27, 39).   Plaintiff took

entry-level college courses and qualified for vocational rehabilitation services from New York

State Office of Vocational and Educational Services (R. 315-16; Docket No. 20, Def. Memo. at

14).

Since 2010, plaintiff worked part time at a grocery store as a cart collector and occasional

cashier (R. 40-42, 208-14, 21).   Plaintiff worked at Wegmans for four years at the time of the

hearing, working up to 28 hours of week due to mental and physical exhaustion if he worked

more than five and half hours (R. 46, 42).   He noted that he took longer to train in operating the

cash register, was slower in scanning and bagging when he covered the cash register, and

initially it took him longer to tie knots in garbage bags before catching on with the technique

(R. 43, 47, 48).   He was concerned that other maintenance workers trained in operating the cash

---

[2]References noted as "(R.___)" are to the certified record of the administrative proceedings, filed with this
Court as Docket No. 8.

register at Wegmans but he was frequently called to cash out, but plaintiff did not know how to address this with his supervisors (R. 51).   Plaintiff discussed this with a counselor and devised strategies on how to broach the subject with his supervisors (R. 51, 540).

Plaintiff claims impairments of static encephalopathy, nonverbal learning disability, attention deficit hyperactivity disorder ("ADHD"), and depressive disorder (R. 22).   Plaintiff complains his static encephalopathy, nonverbal learning disability, and ADHD resulted in attentional deficits, lowed task performance, loss of energy, memory problems, fatigue, and clumsiness (R. 25, 42, 395).   Plaintiff took Adderall to help him focus and allowed him to work and operate the cash register occasionally (R. 42-43, 59-61).   Plaintiff's mother testified at his hearing and stated that he needed specific directions to perform certain chores (R. 68).   She shopped for plaintiff, filled his prescriptions, and managed his money because he was prone to irresponsible purchases (R. 25, 66-67, 68, 407).   Plaintiff lives partly with his mother and partly alone in his father's house, leading to his mother's concerns that plaintiff is not capable to live alone (which she states repeatedly to various examiners and during the hearing her belief that plaintiff is unsafe living alone in his father's house) (R. 67, 506).   She admitted that there were no instances of plaintiff being in danger living alone but she worried about how he would escape during a fire (R. 67).

Plaintiff testified that when he lived at his mother's house she motivated him to do chores, while at his father's house, he had "no one there to help me" (R. 53-54) and he had trouble doing dishes, cleaning floors and bathrooms (R. 54).   He said his mother taught him to do laundry, dishes, vacuum, dust, and scrub the floors (R. 54).

The ALJ, however, found that plaintiff could attend to his personal care, prepare a simple meal, wash dishes, vacuum, clean the bathroom, watch television, read, and listen to the radio (R. 25).   Plaintiff has a driver's license and drives (R. 25).   Although plaintiff's doctor, Dr. David Kowalski, advised that plaintiff not live alone, he does live alone part of the time (R. 25), splitting time between his father's home and his mother's (R. 67).   The ALJ also noted that plaintiff worked 25 hours per week for the last four years as a cart collector at a large grocery store (R. 25).

## MEDICAL AND VOCATIONAL EVIDENCE

Dr. L. Hoffman, the state agency medical consultant, found that plaintiff's mental impairments were not severe (R. 93, 98-99), but the ALJ gave little weight to this finding since Dr. Hoffman was not a treating or examining source (R. 22).   Plaintiff claims that he unable to perform on a sustained basis due to his mental impairments (R. 25).

The ALJ reviewed Listing 12.04 "paragraph B" criteria and similar Listing 12.05 "paragraph D" criteria.   There, the ALJ found plaintiff had only mild restriction in his activities of daily living; mild difficulties in social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation.   (R. 23.)

After reviewing the evidence, the ALJ concluded that the record does not support a finding of disability (R. 25), that he was not persuaded that the intensity, persistence, and limiting effects of symptoms resulted in disabling limitations (R. 25).   The ALJ then found that "while his severe impairments require the restrictions provided . . ., no additional limitations are warranted by the record" (R. 25).   Pointing to his educational records, the ALJ stated that plaintiff only had mild attentional deficits and no behavioral issues or "more than mild

attentional deficits" (R. 25, 348-50), pointing to his graduation from high school as proof of his capabilities (R. 26). Mental and neurological examinations of plaintiff from October 2011 to September 2014 "did not generally reveal attentional problems, memory loss, gait abnormalities, decreased muscle strength, or speech deficits" (R. 26, 395, 398, 459, 461, 463, 466, 506, 518-20, 527-36).

The ALJ then found that plaintiff's residual functional capacity to perform a full range of work at all exertional levels, with non-exertional limitations (R. 24). The non-exertional limitations were that plaintiff is limited to simple repetitive routine unskilled work that does not involve fast-paced tasks, assembly line tasks, or any other high quota work (R. 24). He is also restricted from working on dangerous moving machinery and he should not stand for more than two hours at one time (R. 24).

In support of the assessment, the ALJ pointed to the evaluations of Drs. Michael Santa Maria (R. 26-27, 503) and Jill Hamilton (R. 27, 542), according each "significant weight" (R. 27). The evidence reflects that plaintiff's "intellectual deficits, static encephalopathy, depression, and ADHD restrict him to simple repetitive and routine work that does not involve fast pace, assembly line tasks, high quota work, dangerous moving machinery, or standing for more than two hours at a time" (R. 27; see R. 24), with the residual functional capacity assessment "adequately addressing the claimant's difficulty with complex tasks, slow processing, fatigue, and concentration issues" (R. 27).

Dr. Santa Maria found, in the October 31, 2013, examination that plaintiff had a low average to average intellectual abilities range with only mild deficits in fine motor speed and coordination (R. 26, 503). He found that plaintiff's diagnosis of Nonverbal Learning Disorder is

upheld in the October 2013 evaluation, and could be diagnosed under the DSM-5 as Specific Learning Disorder (with no specifier) (R. 511). Dr. Santa Maria found that plaintiff had a prominent weakness in speed of making basic, simple mathematical calculations in a speeded fashion (R. 511). Plaintiff did not have any longstanding primary deficit in attention, despite an earlier diagnosis of ADHD (R. 511). On the cognitive evaluation, plaintiff performed adequately on a number of measures with strong demands on attention (R. 512). Dr. Santa Maria advised ending pharmacotherapy for attention (R. 512). In his opinion, Dr. Santa Maria found that plaintiff "demonstrates adequate capacity to make general decisions regarding allocation of personal finances. However, I consider him at high risk for mismanagement of finances if left to handle personal finances independently on a hands-on fashion" (R. 512), noting that he has overdrawn his checking account repeatedly (R. 512). As for plaintiff's employability, Dr. Santa Maria found that plaintiff could continue in his job collecting shopping carts but plaintiff's ability to perform cashier duties would be "more tenuous" (R. 512-13). The doctor then concluded that plaintiff "demonstrates adequate cognitive capacity to handle various other entry-level competitive employment roles of a relatively routine and repetitive nature and without substantial demands of novel problem solving or management of others" (R. 513). Plaintiff has "mild range depression" due to cognitive limitations and associated limitations to independence (R. 513). Dr. Santa Maria felt counseling, rather than medication, would resolve this issue (R. 513). He also opines that plaintiff could transition into relatively independent living with some outside support and supervision (R. 513).

Plaintiff notes, however, that Dr. Santa Maria found that plaintiff had impairments in executive functioning, motor processing and fine motor skills, and spatial abilities (R. 507-10;

Docket No. 13, Pl. Memo. at 18) but the ALJ did not adopt this in the residual functional capacity determination (Docket No. 13, Pl. Memo. at 18).   Specifically, Dr. Santa Maria found that plaintiff had impaired grip strength in his dominant (left) upper extremity and fine motor speed and coordination was impaired in the nondominant (right) upper extremity (R. 507, 509). As for executive functioning, plaintiff's ability to make speeded mental arithmetic calculations was impaired (R. 509, 510), as well as performance of higher-level problem-solving abilities (R. 509, 510).

Dr. Hamilton assessed plaintiff on March 18, 2010 (R. 388), noting that he had problems with fine motor control, graphomotor skills, gross motor skills, memory, and visual-spatial processing (R. 388).

Dr. Hamilton then assessed plaintiff on February 25, 2014 (R. 542).   Plaintiff tested under the Vineland-II and in its three domains of communication, daily living skills, and socialization, he had low standard scores, with one moderately low score (R. 545), with plaintiff having an Adaptive Behavior Composite score of 50, indicating "functioning in the very low range of adaptive abilities" (R. 545, 546).   Dr. Hamilton also found that plaintiff had a long history of weakness in spatial skills, motor skills, social skills, and self-care skills (R. 546).   The ALJ concluded that Dr. Hamilton noted that plaintiff would have difficulty performing multi-step tasks (R. 27).

The ALJ found no other limitations were warranted by plaintiff's medical record (R. 27). Plaintiff's examinations did "not reflect significant concentration or memory deficits despite the claimant's cognitive scores" (R. 27).   Although alleging motor skills issues, plaintiff's "physical assessments did not regularly reveal gait abnormalities or dexterity issues" (R. 27).   While

claiming that plaintiff needs supervision, the ALJ noted that plaintiff lived alone on a part-time

basis.   The ALJ found plaintiff could drive, attend to his personal care, prepare simple meals,

wash dishes, and maintain part-time employment as a cart collector and occasional cashier.   (R.

27.)

Presented a hypothetical similar to plaintiff's residual functional capacity, with his age,

education, and work experience, the vocational expert opined that such a claimant could perform

as a dining room attendant, laundry worker II, or kitchen helper (R. 28, 80-91).   The ALJ

concluded that plaintiff was not disabled.

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the

plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C.

§ 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined

as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person

is disabled when unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

8

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.   Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."   Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467.   If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir.

1992).   However, it should be noted that the ALJ has an affirmative duty to fully develop the record.   Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past.   20 C.F.R. §§ 404.1520(e) & 416.920(e).   When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work."   See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).   The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity.   Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff argues that the ALJ insufficiently evaluated his impairments and limitations, thus finding a residual functional capacity assessment not supported by substantial evidence (Docket No. 13, Pl. Memo. at 16-22).   Plaintiff points out his difficulties with motor skills, visual spatial skills, social awareness and judgment, overdependence, stress, and working memory (id. at 16).   He also contends that the ALJ failed to account for or explain the findings of Dr. Hamilton or Dr. Santa Maria (id. at 17; R. 388-90, 503-13, 542-46).   These doctors found that he had limitations in sensory, motor processing and coordination, cognitive deficits, adaptive, communication, socialization, executive functioning, and spatial abilities

10

(Docket No. 13, Pl. Memo. at 17; R. 388-90, 507-11, 542-46).    Instead, plaintiff argues the ALJ

relied upon what plaintiff deems to be Dr. Santa Maria's vague opinion (that plaintiff can collect

carts) without substantial evidence (Docket No. 13, Pl. Memo. at 19).    Plaintiff argues that the

ALJ also mischaracterized plaintiff's activities of daily living, undermining his residual

functional capacity finding (id. at 22-25).    Plaintiff next claims that the ALJ also erred in finding

that plaintiff can perform jobs in the national economy and failed to account for his unique

stressors (id. at 25-30).

Defendant responds that substantial evidence supports the ALJ's residual functional

capacity assessment (Docket No. 20, Def. Memo. at 19-21) and the ALJ properly evaluated

plaintiff's credibility on his subjective symptoms (id. at 21-25).    Defendant contends that the

Commissioner met her burden at step 5 of the analysis (regarding use of the vocational expert

and his opinion on what the hypothetical claimant can perform) (id. at 25-27).

I.      Plaintiff's Impairment and Residual Functional Capacity

Plaintiff argues that, while giving significant weight to the opinions of Drs. Hamilton and

Santa Maria, the ALJ did not take into account their respective findings relating to plaintiff's

limitations in sensory, motor processing and coordination, cognitive deficits, adaptive,

communication, socialization, executive functioning and spatial abilities (Docket No. 13, Pl.

Memo. at 17-18; R. 507-10).    For example, while Dr. Santa Maria found plaintiff could handle

cart collection he did not reconcile this with plaintiff's need for assistance if he attempted

independent living (Docket No. 13, Pl. Memo. at 19; R. 503-13).    The ALJ did not include

Dr. Santa Maria's limitations in the ALJ's assessment, not noting that Dr. Santa Maria found

plaintiff had "prominent weakness in motor processing speed, spatial perception, organization, and problem solving" (Docket No. 13, Pl. Memo. at 19; R. 511-12).

Despite the limitations noted by plaintiff and found by Dr. Santa Maria, the psychologist also found that plaintiff could perform his present work as a shopping cart collector but working ever as a part time cashier was tenuous (R. 512).   Another treating psychologist, Dr. Joshua Mirwis, saw plaintiff in seven sessions in 2014 to enable plaintiff to become more independent and to feel more comfortable doing so (R. 540).   Dr. Mirwis concluded that plaintiff had evidence of Specific Learning Disorder and several life domains indicative of living independently which "would clearly be difficult at this time," but plaintiff could learn the necessary skills "with appropriate support, to the point of <u>eventually</u> being able to live entirely on his own" (R. 540, emphasis in original).

The ALJ had sufficient evidence to find the residual functional capacity, noting that (with assistance) plaintiff can live independently and perform on the job.   Plaintiff's arguments to the contrary are based upon his mother's concerns about his inability to live alone.

II.    Plaintiff's Activities of Daily Living

Plaintiff next argues that the ALJ mischaracterized his activities of daily living in evaluating the intensity, persistence and functionally limiting effects of his condition (Docket No. 13, Pl. Memo. at 22-25).   While focusing on plaintiff's ability to perform simple tasks, the ALJ erred in not considering plaintiff's inability to handle money, laundry, cooking, and other living skills independently (<u>id.</u> at 23).   The ALJ said plaintiff acknowledged that he could live alone part-time, that plaintiff could drive, attend to personal care, make simple meals, wash dishes, vacuum, and clean the bathroom (R. 27; Docket No. 13, Pl. Memo. at 23).   Plaintiff

argues, however, that the ALJ ignored the total record (Docket No. 13, Pl. Memo. at 23). He points to his and his mother's testimony about plaintiff requiring supervision and assistance in daily living and at work. Plaintiff's mother said that plaintiff should not live alone and, when he lived with her, she assisted him in many daily life activities. Although plaintiff admitted to performing various daily life tasks, plaintiff claims that he did those while "highly supervised fashion" (id.; R. 24-27). His mother testified that she needed to specify the particular details of the chores he had to perform at her house when he stayed with her (R. 68). She also believed that plaintiff was in an unsafe situation when he lived alone in his father's house without supervision, but did not state specific instances of dangerous activities or undone tasks due to plaintiff living by himself (cf. R. 67-68). Plaintiff stated that his mother motivated him to perform chores (R. 53). At his father's house, plaintiff did not have help and he had trouble keeping up with the dishes, cleaning the floors or bathroom (R. 54; Docket No. 13, Pl. Memo. at 23).

He testified that he worked in maintenance at the grocery store with another to help; when he had to work alone, plaintiff said that he fell behind and became stressful (R. 58). Plaintiff needed a job coach to obtain a job at one grocery and plaintiff's mother testified that she helped him get his job at the second (filling out the application, telling him what to say during the interview) (R. 69).

Plaintiff concludes that the combination of plaintiff's impairments and their limiting effects "erode the occupational base for unskilled work" (Docket No. 13, Pl. Memo. at 25), thus plaintiff concludes that the ALJ's residual functional capacity assessment does not reflect plaintiff's limitations (id.). As noted above, the ALJ had sufficient evidence in this record for

13

the findings of activities of daily life that plaintiff can perform.   Drs. Santa Maria and Mirwis

(R. 513, 540) found that, with limitations, plaintiff can perform several daily activities or could

learn to live more independently.   Plaintiff worked at Wegmans for four years in maintenance

and part time cashier, learning to perform both jobs (albeit slower than others do).

III.    Ability to Perform Jobs

Finally, plaintiff argues his impairments eroded his occupational base and could not

perform the three occupations the vocational expert opined a hypothetical claimant could

perform (Docket No. 13, Pl. Memo. at 25-30).   The vocational expert opined that the

hypothetical claimant could perform unskilled occupations such as kitchen helper (or

dishwasher), dining room attendant (that is busing tables), or laundry worker II (R. 28, 82-83).

As described by the vocational expert, these positions are repetitive, allows for breaks, and not

stressful, stating that the dishwasher can rewash any item not completely clean (R. 82).   The

record here, in particular plaintiff's stint at Wegmans, shows that he is capable to perform the

unskilled occupations mentioned by the vocational expert.   The ALJ did not err in relying upon

the vocational expert's opinion.

**CONCLUSION**

For the foregoing reasons, this Court recommends that the decision of the Commissioner

be **AFFIRMED**.   Defendant's motion for judgment on the pleadings (Docket No. 20) should be

**GRANTED** and plaintiff's motion for similar relief in his favor (Docket No. 13) should be

**DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.   See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the

basis for each objection, and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

*/s/Hugh B. Scott*

Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
April 26, 2018

16